OSCN Found Document:MILLS v. J-M MFG. CO. INC. et al

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MILLS v. J-M MFG. CO. INC. et al
2025 OK 23
Case Number: 121781
Decided: 04/08/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 23, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JASON MILLS and MELISSA MILLS, Plaintiffs,
v.
J-M MFG. CO., INC., d/b/a JM EAGLE and RAINMAKER SALES, INC., Defendants/Appellees,
and
CHARTER OAK PRODUCTION CO., LLC, Defendant/Appellant,
C&M ROUSTABOUT SERVICES, LLC; SPL CONTROL LLC; and JOHN DOES 2-15 Defendants.

OPINION

¶0 Charter Oak Production Co., LLC paid to settle a property damage claim brought by landowners after a pipeline installed on its easement ruptured. Charter Oak then sought indemnity from JM Eagle, Inc., and Rainmaker Sales, Inc., who supplied the pipe Charter Oak alleges was defective. The district court granted summary judgment in favor of JM Eagle and Rainmaker, finding that Charter Oak lacked the legal relationship required to assert an indemnity claim and that the claim was barred by the economic loss rule. The Court of Civil Appeals, Division IV, reversed. We granted certiorari to address whether a party may seek indemnity without an independent legal relationship and whether the economic loss rule bars indemnity for damage to third-party property.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
ORDER OF DISTRICT COURT REVERSED

Kenneth H. Blakley, BLAKLEY LAW PLLC, Oklahoma City, Oklahoma, for Charter Oak Production Co., LLC

Brooks Richardson & Nicholas V. Merkley, GableGotwals, Oklahoma City, Oklahoma, for JM Eagle

Robert S. Lafferrandre, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Rainmaker Sales, Inc.

KUEHN, V.C.J.:

¶1 Charter Oak was held vicariously liable for saltwater damage caused by a defective pipeline installed by an independent contractor. Under its non-delegable duty as the dominant tenant of an easement, Charter Oak independently settled with the property owners and sought indemnity from JM Eagle, the manufacturer, and Rainmaker, the distributor. The issues on appeal are: (1) whether Charter Oak may seek indemnity in the absence of an independent legal relationship with either JM Eagle or Rainmaker; and (2) whether the economic loss rule bars its claim.

I. Background

¶2 This litigation arose from a saltwater spill on the property of Jason and Melissa Mills. Charter Oak Production Co., LLC ("Charter Oak") retained independent contractor C&M Roustabout Services, LLC ("C&M") to install a saltwater transfer pipeline within Charter Oak's easement on the Millses' land. C&M purchased the pipeline materials from Rainmaker Sales, Inc. ("Rainmaker"), which acquired the pipe from the manufacturer, JM Eagle, Inc. ("JM Eagle"). Shortly after installation, the pipeline failed under pressure, presumably due to a manufacturing defect. 

¶3 The Millses sued Charter Oak and C&M for negligence, and JM Eagle and Rainmaker for manufacturer's product liability. Pursuant to its non-delegable duty as the dominant tenant of the easement, Charter Oak was held vicariously liable for the damage to the Millses' property. 

¶4 Below, Charter Oak contended that it is entitled to seek indemnity from the parties allegedly responsible for the defective pipe--JM Eagle and Rainmaker. JM Eagle and Rainmaker moved for summary judgment, arguing that: (1) Charter Oak lacks the necessary legal relationship with either JM Eagle or Rainmaker to support a claim for indemnity; and (2) even if indemnity is available, the economic loss rule bars recovery for purely economic damages under manufacturer's product liability. The district court granted summary judgment in favor of JM Eagle and Rainmaker on both grounds.

¶5 The Oklahoma Court of Civil Appeals, Division IV, reversed the district court, finding that: (1) Charter Oak's non-delegable duty to the Millses created the legal relationship necessary to support an indemnity claim against JM Eagle and Rainmaker; and (2) Charter Oak's claim was not barred by the economic loss rule.

¶6 JM Eagle and Rainmaker petitioned for certiorari, seeking review of the Court of Civil Appeals' decision. They argue that: (1) because Charter Oak had no independent legal relationship with either JM Eagle or Rainmaker, the relationship required to support an indemnity claim is not established; and (2) because Charter Oak did not itself suffer property damage, but instead compensated the Millses for their loss, its damages are purely economic and are therefore barred by the economic loss rule. We granted certiorari to clarify the legal relationship necessary to bring an indemnity claim and to elaborate on the parameters of the "other property" exception to the economic loss rule.

II. Standard of Review

¶7 Summary judgment settles only questions of law; therefore, our review is de novo. Toch, LLC v. City of Tulsa, 2020 OK 81474 P.3d 859Am. Biomedical Grp., Inc. v. Techtrol, Inc., 2016 OK 55374 P.3d 820de novo review, an appellate court has plenary, independent, and non-deferential authority to determine whether the trial tribunal erred in its legal rulings. Snow v. Town of Calumet, 2022 OK 63512 P.3d 369State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61222 P.3d 1058

III. Discussion

Indemnity Under Oklahoma Law

¶8 The first issue is whether Charter Oak may seek indemnity from JM Eagle and/or Rainmaker for the damages it paid to the Millses, despite the absence of an independent legal relationship between Charter Oak and either JM Eagle or Rainmaker.

¶9 Indemnity is a right of a party who fulfills a legal obligation to seek reimbursement from another party that should have borne that responsibility. Thomas v. E-Z Mart Stores, Inc., 2004 OK 82102 P.3d 133Id.

¶10 The right of indemnity is often established through a contract where one party agrees to save another from legal consequences arising from certain conduct. Nat'l Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc., 1989 OK 157784 P.2d 52Id.; 41 Am. Jur. 2d Indemnity § 20. This is referred to as noncontractual or implied indemnity. In any case, the right of indemnity is premised on the understanding that a legal relationship exists between the parties. Nat'l Union, 1989 OK 157.

¶11 Oklahoma law imposes a non-delegable duty on Charter Oak not to damage the Millses' property. See Bouziden v. Alfalfa Elec. Coop., Inc., 2000 OK 5016 P.3d 450

¶12 Such a relationship may arise from the dominant tenant's non-delegable duty to the servient estate when that duty is imposed by operation of law, and liability should have been borne by the actual wrongdoer:

[O]ne constructively liable for a tort is generally held entitled to indemnity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify. Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter, whether contractual relations exist between them or not.

Porter v. Norton-Stuart Pontiac-Cadillac of Enid, 1965 OK 18405 P.2d 109Indemnity § 18); accord Travelers Ins. Co. v. L.V. French Truck Serv., Inc., 1988 OK 76770 P.2d 551

¶13 That is precisely what occurred here. Although Charter Oak owed a non-delegable duty to the Millses, it bore no fault for the defective pipe. That duty arose by operation of law, but the fault lies with those whose conduct actually caused the harm. Accordingly, because Charter Oak's non-delegable duty to the Millses was imposed by law and its liability was entirely vicarious, it is entitled to seek indemnity from the alleged wrongdoers--JM Eagle and/or Rainmaker.

The Economic Loss Doctrine

¶14 JM Eagle and Rainmaker also argue that, even if Charter Oak is entitled to indemnity, its claim is barred by the economic loss rule. They contend that because Charter Oak did not suffer damage to its own property, but instead compensated the Millses for harm to their land, Charter Oak's loss is purely economic and therefore not recoverable. This position reflects a fundamental misunderstanding of the economic loss rule and the principles underlying its application.

¶15 The economic loss rule is a court-created doctrine that bars recovery under manufacturer's product liability for purely economic injury to the product itself. Waggoner v. Town & Country Mobile Homes, Inc., 1990 OK 139808 P.2d 649Id. at ¶ 21.

¶16 To date, we have recognized two exceptions to the economic loss rule: (1) where there is a personal injury; and (2) where there is damage to property other than the product itself. Id. at ¶ 14 (citing Kirkland v. Gen. Motors Corp., 1974 OK 52521 P.2d 1353Kimbrell v. Zenith Radio Corp., 1976 OK 134555 P.2d 590

¶17 This Court applied the personal injury exception to the economic loss rule in Dutsch v. Sea Ray Boats, Inc., 1992 OK 155845 P.2d 187Id. at ¶ 5. Because the defect caused both personal injury and damage to the defective product, the plaintiff's claim was not barred under a manufacturer's products liability theory. Id. at ¶ 28--31.

¶18 While we have previously applied the personal injury exception, this is the first case to address the application of the economic loss rule where a defective product causes damage to property other than the product itself. Here, there is no dispute that the damage extended to other property, as all parties acknowledge that the Millses' land is distinct from the defective pipeline.

¶19 JM Eagle and Rainmaker, however, contend that the "other property" exception does not apply because the damaged property did not belong to Charter Oak. This raises the question of whether the economic loss rule bars indemnity when damage occurs to other property owned by a third party. This is an issue of first impression in Oklahoma.

¶20 JM Eagle and Rainmaker's position collapses under scrutiny. First, the purpose of the economic loss rule is to preserve the boundary between tort and contract by precluding recovery for purely economic losses where contract remedies exist--not to bar indemnity where a party discharges a legal obligation for damage to third-party property. Second, had the Millses proceeded to judgment on their manufacturer's product liability claims against JM Eagle and Rainmaker, those claims would not have been barred by the economic loss rule, as the damage to their land plainly falls under the "other property" exception. Third, Charter Oak fulfilled its non-delegable duty to the Millses despite having no role in selecting the pipe, directing the work, or causing the failure. Punishing it for doing so is both inequitable and contrary to the principles underlying indemnity. Fourth, while this is an issue of first impression in Oklahoma, JM Eagle and Rainmaker cite no authority from this or any other jurisdiction to support their interpretation of "other property."

¶21 Accordingly, the economic loss rule does not bar a claim for indemnity where a party satisfies a legal obligation to compensate for damage to third-party property caused by a defective product. To hold otherwise would extend the doctrine beyond its intended scope and produce an unjust result unsupported by law or logic.

Conclusion

¶22 Charter Oak's vicarious liability to the Millses arose solely from its non-delegable duty as the dominant tenant of the easement, which required it to prevent damage to the Millses' property. We hold that this duty, imposed by operation of law, establishes the legal relationship necessary for Charter Oak to seek indemnity from the parties allegedly responsible for the defective pipe--JM Eagle and Rainmaker. We further hold that the economic loss rule does not bar Charter Oak's indemnity claim, as it seeks reimbursement for damage to property other than the defective product itself. Accordingly, we vacate the Court of Civil Appeals' decision, reverse the district court, and remand this matter for further proceedings consistent with this opinion.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
ORDER OF DISTRICT COURT REVERSED

CONCUR: ROWE, C.J., KUEHN, V.C.J., and WINCHESTER, EDMONDSON, GURICH, DARBY and KANE, JJ.

DISSENT: COMBS, J.

FOOTNOTES

12 O.S.2021, § 832

See, e.g., Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 315, 779 A.2d 67, 71 (2001) ("The economic loss rule clearly applies to commercial disputes outside the confines of product liability . . . ."); Ramerth v. Hart, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999) ("The economic loss rule applies to negligence cases in general; its application is not restricted to products liability cases."). We have not adopted such an expansive approach, and the facts of this case do not warrant doing so. Accordingly, we decline to extend the economic loss rule beyond products liability here.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105